904 F.2d 531
 53 Fair Empl.Prac.Cas. 59, 53 Empl. Prac.
Dec. P 40,006
Claude RODRIGUEZ, et al., Plaintiffs,
Leroy E. Gibbs, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION; H.R.M. Committee; David
Harriet; Marlin Hess; Kenneth Bridges; K.C.
Beck; Dennis Heinemann; Richard
Conrad; Robert Weatherly, et
al., Defendants-Appellees.
 No. 88-6150.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 11, 1990.
Decided June 6, 1990.
 
 Peter F. Laura, and Mickey J. Wheatley, Law Offices of Leroy S. Walker, Los Angeles, Cal., for plaintiff-appellant.
 Andrew C. Peterson, and Stephen L. Berry, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before BROWNING, NOONAN, and FERNANDEZ, Circuit Judges.
 NOONAN, Circuit Judge:
 
 
 1
 Leroy E. Gibbs brought suit against General Motors Corporation and named individuals (GM) for the deprivation of civil rights guaranteed under 42 U.S.C. Sec. 1981. The district court granted summary judgment for GM. Gibbs appealed. The case is very close, but we think Gibbs has put forward maybe just enough evidence to require a jury to determine the issues in dispute. We reverse and remand.
 
 PROCEEDINGS
 
 2
 Gibbs and 18 others filed their complaint in this Sec. 1981 action July 15, 1985, amending it on November 13, 1985. The complaint identified Gibbs as Black and the other plaintiffs as "minority citizens, either Black, Latino or Indian," employed by GM at its plant in Van Nuys, California. Among the allegations was that GM had engaged in racially discriminatory practices with the purpose and effect of denying the plaintiffs "the same right to make and enforce contracts with GM as is enjoyed by white GM employees."
 
 
 3
 At the time the district court considered GM's motion for summary judgment, only Gibbs remained as a plaintiff. The district court held that all but one of Gibbs' claims was barred by the one-year statute of limitations set out in Cal.Civ.Proc.Code Sec. 340(3). The court did consider Gibbs' barred claims as history relevant to his claim of discrimination. The court, however, concluded that there was not enough evidence in this history to support Gibbs' remaining claim of discrimination in being denied appointment as general supervisor of maintenance. The court held that Gibbs had "failed to rebut defendants' articulation that Potter got the position because he was more qualified for it than plaintiff was. Furthermore, plaintiff has not demonstrated that he was legally damaged by the denial of a lateral transfer." Summary judgment was granted GM. Gibbs appealed.
 
 ANALYSIS
 
 4
 The Material Facts in Dispute. To establish a prima facie case under Sec. 1981 Gibbs had to show that he was a member of a protected class; that he applied and was qualified for an open position; that he was rejected; and that the position remained open. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973); Yartzoff v. Thomas, 809 F.2d 1371, 1374 (9th Cir.1987).
 
 
 5
 Gibbs had begun to work for GM at Van Nuys in 1957. He had started as an assembler and persevered despite mean taunts and heckling because of his race. By 1980 he had advanced to the seventh-level position of general supervisor in maintenance. He was the most senior general supervisor and when the eighth level superintendent of supervisors was out, Gibbs was the acting superintendent. In 1980 he was moved to the seventh level position of general supervisor of housekeeping. Believing himself demoted, in 1984 he sought to return to the position of general supervision in maintenance. The job went to someone else.
 
 
 6
 Gibbs was a member of a protected class, African-American, and he was rejected in favor of a white person, Bob Potter. It is not disputed that he was qualified. It is disputed whether the position of general superintendent of maintenance was open when he applied for it. On this point the deposition testimony of Gibbs is in conflict with that of his supervisor, Dennis G. Heinemann. This element of Gibbs' case could not have been resolved by summary judgment but would have to be decided by a jury.
 
 
 7
 As the Supreme Court has expressed it, once a prima facie case is established, the employer must "articulate" a legitimate reason for the employment decision the employer made. McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S.Ct. at 1824. To "articulate" does not mean "to express in argument." See Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 255 n. 9, 101 S.Ct. 1089, 1094 n. 9, 67 L.Ed.2d 207 (1981). It means to produce evidence. Id. In the great majority of cases the employer is able to produce such evidence. These cases then turn on whether the employee can show that the articulated, legitimate reason was, in fact, pretextual. Schlei and Grossman, Employment Discrimination Law, 1317 (1983). The plaintiff must be afforded a fair opportunity to demonstrate that the proffered reason was "pretextual or discriminatory in its application." McDonnell Douglas Corp. v. Green, 411 U.S. at 804, 93 S.Ct. at 1825.
 
 
 8
 Assuming that Gibbs did have a prima facie case, GM contends that it met the case by articulating a legitimate non-discriminatory reason for its employment decision. In fact, GM gives three reasons. The first is the deposition testimony of Dennis Heinemann that the position had already been filled. As this reason is disputed, it cannot be a basis for summary judgment.
 
 
 9
 The second reason provided by GM is James Edgar Clark's deposition testimony that there was a consensus of the group recommending the promotion that Bob Potter was "the person best qualified." The argument has particular force since Gibbs himself appears to have been a member of the group. In rebuttal of this position Gibbs' deposition testimony is that he thought the position was still open and he believed that his qualifications were superior to Potter's so he could not have consented to a consensus that Potter was better qualified.
 
 
 10
 GM's third reason is provided by Dennis Heinemann's deposition that Bob Potter, holding a sixth-level position, was preferable as the supervisor of the maintenance department because he would be better at getting along with the production department that was the "customer" of maintenance. This somewhat unilluminating and conclusory testimony is undercut by Heinemann's other testimony that he did not think Gibbs applied for the job while it was still open. If this latter testimony is taken at face value, Heinemann made no comparison between Gibbs and Potter. It was for the jury, not the judge, to resolve the conflicts in Heinemann's deposition and to resolve the conflict between Gibbs and Heinemann.
 
 
 11
 Of the three reasons why Gibbs was not given the job each was legitimate. Each was supported by deposition testimony. Gibbs, however, was not given a fair opportunity to refute any of them. The three reasons are inconsistent, and their inconsistency requires a judgment of credibility that it was for the trier of fact to make. True, to withstand the motion for summary judgment Gibbs had to do more "than establish a prima facie case and deny the credibility of the employer's witnesses." Schuler v. Chronicle Broadcasting Co., 793 F.2d 1010, 1011 (9th Cir.1986). He had to "offer specific and significantly probative evidence that the employer's alleged purpose [was] a pretext for discrimination." Id. Unlike Schuler, Gibbs is not merely denying the employer's reasons. He is pointing to specific divergencies between the three reasons. His case, of course, is not open and shut. The triers of fact might find the divergencies harmless, the kind of difference in detail that is frequently met in accounts of human affairs. On the other hand, the triers of fact might find the story of the "consensus meeting" not believable and Heinemann's interview with Gibbs to have been a real job interview, and the triers might want to know more about Bob Potter before deciding that this sixth-level man from a different department was preferable to Gibbs. Gibbs should have the opportunity to test the credibility of the reasons before the jury.
 
 
 12
 The district court also ruled that Gibbs had suffered no damage in being denied a lateral transfer. This ruling did not take into account Gibbs' deposition testimony that, although in form he held a level 7 position, in fact he had been demoted in 1980 to a level 6 position and that he was attempting to escape from his present demeaning role by applying for the level 7 job. It was not the province of the district court to weigh Gibbs' credibility. His deposition clearly presented a question of fact as to whether the job was merely the lateral transfer the district court thought it was or a substantially new opportunity.
 
 
 13
 The Effect of Patterson. At the time Gibbs' case was before the district court, Patterson v. McLean Credit Union, --- U.S. ----; 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) had not been decided by the Supreme Court. It may be argued, however, that the case now bars Gibbs' claim because of its holding that racial harassment is not actionable under Sec. 1981. Id. 109 S.Ct. at 2373.
 
 
 14
 Patterson, however, does hold that Sec. 1981 does make actionable a claim that one was denied a promotion rising "to the level of an opportunity for a new and distinct relation between the employee and the employer." Id. at 2377. The question in this case is whether Gibbs presents such a claim. Patterson provides two examples of what an actionable denial of promotion might be. After the quoted language, there is a "Cf." reference to Hishon v. King & Spalding, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), a Title VII case where a law firm had not promoted an associate to partnership. The example suggests a fairly substantial change in status.
 
 
 15
 On the other hand, in Patterson itself the plaintiff was a teller and file coordinator for a credit union. She brought suit because a white employee who was an accounting clerk had "received a title change from 'Account Junior' to 'Account Intermediate,' [a] title change entail[ing] no change of responsibility," and Patterson thought she should have gotten the job. Patterson v. McLean Credit Union, 805 F.2d 1143, 1145 (4th Cir.1986). The Supreme Court, noting that the defendant had not argued that Patterson's promotion claim was not cognizable under Sec. 1981, did not address the issue of whether her claim involved a new and distinct relation between the employee and employer. Nonetheless the Supreme Court sent Patterson's case on promotion back for an error in instructions to the jury, implying that her case should go to the jury, Patterson, 109 S.Ct. at 2378-2379; otherwise, there would have been no need for the Supreme Court to set out what the appropriate jury instructions should be. It is not clear from the Circuit Court and Supreme Court opinions exactly how much of an opportunity the job as accounting clerk represented for Patterson. The case, however, does suggest that the standard to be met is not always the leap from associate to partner in a law firm.
 
 
 16
 As the Patterson issue was not confronted by the district court, both parties should now have the opportunity to address the issue before the district court. It may be that the issue can be resolved by summary judgment. On the other hand, it may be that Gibbs' evidence that the job was in fact a substantial opportunity for him will be sufficient to defeat a motion for summary judgment and entitle him to place the issue before a jury.
 
 
 17
 Gibbs' Other Claims. The district court treated all the incidents alleged by Gibbs that had happened before July 15, 1984 as barred by the California statute of limitations. The district court was in error as to the statute of limitations it applied. The undisputed law of this circuit at the time Gibbs filed was that the statute of limitations for Sec. 1981 actions was Cal.Civ.Pro. Sec. 338(1), a three-year statute. Jones v. Bechtel, 788 F.2d 571, 573 (9th Cir.1986); London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir.1981). The Supreme Court has made explicit that, when there is established precedent setting the limitations period, its decision that Sec. 1981 should be governed by the state statute applicable to violations of personal rights should not be made retroactive. Goodman v. Lukens Steel Co., 482 U.S. 656, 661-63, 107 S.Ct. 2617, 2621-22, 96 L.Ed.2d 572 (1987). Accordingly, we hold that the statute governing Gibbs' claim was the three-year statute and that the only claims barred are those that arose before July 15, 1982.
 
 
 18
 The error as to the limitations period was, however, harmless because the incidents were instances of racial harassment, not actionable under Patterson. Moreover, the district court properly treated all of the incidents it thought time-barred as history relevant to Gibbs' actionable claim. If his case should be submitted to a jury, the evidence as to these incidents will now properly be before the jury.
 
 
 19
 The question is left open under Patterson as to whether a substantial demotion might also be actionable under Sec. 1981 on the theory that it, in a discriminatory way, interfered with enforcement of a contract. Gibbs has such a claim, but it is barred by the applicable three-year statute of limitations. For this reason, we think the district court did not abuse its discretion in denying Gibbs' motion to compel the production of evidence relating to this claim.
 
 
 20
 REVERSED and REMANDED.